**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PROSPECT CAPITAL MANAGEMENT L.P., | ) |
| | ) |
| *Petitioner* | )   C.A. No.: |
| | ) |
| v. | ) |
| | ) |
| STRATERA HOLDINGS, LLC and | ) |
| DESTRA CAPITAL MANAGERS LLC, | ) |
| | ) |
| *Respondents*. | ) |

**PETITION AND MOTION TO CONFIRM ARBITRATION AWARD AND
<u>VACATE UNAUTHORIZED MODIFICATIONS</u>**

Prospect Capital Management L.P. ("Prospect") moves for an order (i) confirming an arbitration award (pursuant to 9 U.S.C. § 9) and (ii) vacating impermissible after-the-fact modifications to that award (pursuant to 9 U.S.C. § 10).  The decisions of arbitrators are ordinarily entitled to considerable deference.  However, one bright line that arbitrators may not cross is provided by the long-standing *functus officio* doctrine:  "[O]nce [an] arbitrator decides an issue, the *functus officio* doctrine prohibits him from revising that decision without the parties' consent." *Verizon Penn., LLC v. Commc'ns Workers of Am.*, 13 F.4th 300, 303 (3d Cir. 2021).  Likewise, under the American Arbitration Association Commercial Rules that governed the arbitration at issue, arbitrators who have decided an issue through an award may not revisit their decision by modifying any aspect of such award except "clerical, typographical or computational errors."  In this case, the arbitrators took precisely this prohibited step by modifying a previous award despite admitting that there were no "clerical, typographical or computational errors."  The arbitrators in this case issued their award resolving all liability issues after a full hearing, then—two months later, on a unilateral application by Respondents Stratera Holdings, LLC ("Stratera") and Destra Capital Managers LLC ("Destra")—granted Respondents an additional category of relief the

original award (the "Award") had denied.  The arbitrators lacked any authority to make this substantive modification to the Award.  Their revised award ("Revised Award") should be vacated, and the Award confirmed.

## PRELIMINARY STATEMENT

1.      Prospect and Stratera launched the Priority Income Fund ("Fund") in 2012, pursuant to an arrangement under which Prospect managed the Fund and a Stratera-affiliated entity named Provasi Capital Partners LP ("Provasi") acted as the Fund's wholesaler (a "wholesaler," "sub-wholesaler," "dealer-manager," or "distributor" sells shares of a fund in offerings specified in SEC documents).  In May 2018, after Stratera-affiliated Provasi abruptly resigned as wholesaler (terminating all its people, ceasing operations, and providing no further service to the Fund), the Fund hired Destra affiliate Destra Capital Investments, LLC ("DCI") as sub-wholesaler to sell shares of the Fund.

2.      The dispute before the panel of arbitrators concerned the division of management and incentive fees ("Management Fees") pursuant to the May 11, 2018 Third Amended and Restated Limited Liability Company Agreement ("Agreement") of Priority Senior Secured Income Management, LLC ("LLC"), the entity that received Management Fees from the Fund. (Declaration of Katharine L. Mowery, Ex. 1.)[1]

3.      Under the Agreement, Respondents' share of Management Fees was based on the number of Fund shares that DCI (and previously, Provasi) sold in the Fund's public offerings as

_____

[1] All citations to exhibits reference exhibits to the Declaration of Katharine L. Mowery filed concurrently herewith.

specified in the Agreement (each an "Offering").  (*Id.*, §§ 3.03(b)(1), 10.01.)[2]  The dispute before the panel concerned Management Fees relating to four categories of shares: (1) shares issued through the Fund's dividend-reinvestment plan[3] ("DRIP" shares) in place of cash dividends on shares sold by Destra affiliate DCI; (2) DRIP shares issued in place of cash dividends on shares sold, prior to the Agreement, by Stratera affiliate Provasi and without any connection to DCI; (3) shares issued by the Fund through the separate process of a stock-for-stock merger with Stira Alcentra Global Credit Fund ("Stira"); and (4) DRIP shares on Stira shares ("Stira DRIP").[4]

4.     Prospect, relying on the definitions in Article 10 and other sections of the Agreement designating shares for which Destra and Stratera would receive fee credit, maintained that the text of the Agreement included none of the foregoing four categories of shares in Respondents' fee stream.[5]  Respondents argued that Schedule 11.18 of the Agreement, "examples . . . for discussion purposes only," hastily prepared the day before execution of the Agreement by business people, indicated that Respondents were entitled to 50% of all Management Fees without regard to whether DCI or Provasi had sold the relevant shares in an "Offering," or sold them at all, as required by the Agreement, and accordingly that all four categories at issue should be included in the calculation of Respondents' fee stream.  (Ex. 1, Schedule 11.18.)

---

[2] The definitions linked Respondents' Management Fees to the percentage of Fund shares they sold in an "Offering" divided by total Fund shares, with "Offering" defined as two specific securities registrations.

[3] The Fund pays cash dividends to shareholders each quarter.  Under the Fund's dividend reinvestment plan, a shareholder may elect to use such cash dividends to purchase more Fund shares instead of receiving cash.

[4] Respondents also raised unilateral mistake and fraudulent inducement claims.  The panel denied those claims.

[5] Prospect maintained DRIP shares were not issued in an  "Offering," as defined by the Agreement and federal securities laws.  Even after an "Offering" ends, and the Fund no longer has any distributor, wholesaler, or sub-wholesaler, DRIP shares continue to issue to investors in the Fund who have chosen to receive DRIP shares in lieu of cash dividends.  Prospect showed Stira shares (including DRIP on Stira shares) were issued pursuant to a merger, not in the Offering.

5.      On October 8, 2021, the arbitration panel issued an "Interim Award" (the "Award") definitively resolving all merits issues, leaving open only the calculation of damages and attorneys' fees.  *See* Order #21 (Ex. 2) (defining the Award as "an Order on liability and damages").

6.      The Award emphasized that "the parties have not requested a reasoned award," and that the analysis in the Award would accordingly be limited.  (Ex. 3 at 2.)   The Award explained that although "[t]he Panel has fully considered all arguments raised . . . we do not address each such argument."  (*Id.*)   Nonetheless, "[t]he fact that we do not address some arguments in the ensuing discussion does not mean that such arguments were not fully considered by the Panel." (*Id.*).

7.      The Award then proceeded to grant a single aspect of Respondents' claims—regarding DRIP shares on dividends accruing to "the shares for which [DCI] served as sub-wholesaler" (hereinafter "DCI DRIP") (Ex. 3 at 4-5)—and to reject all other claims, stating that "[a]ll other claims and relief sought are dismissed."  (*Id.* at 5.)   The final page of the Award reinforced this rejection of all claims except those for DCI DRIP, reiterating:  "All claims not addressed herein are denied."  (*Id.* at 18.).

8.      To the extent the Award explained its reasoning for these holdings, it found that because the text of the Agreement (§§ 3.03(b)(1), 4.01(a), 10.01) possibly conflicted with Schedule 11.18, the Agreement was possibly ambiguous, and that neither the text of the Agreement nor Schedule 11.18 should be applied literally.

9.      The Award drew a clear line as follows:  the panel rejected (i) the argument of Prospect that the definition of "Offering" overrides any contrary interpretation of Schedule 11.18 (which consists of "examples . . . for discussion purposes only" (Ex. 1, Sch. 11.18)), and (ii) the argument  of  Respondents  that  the  Agreement  should  be  construed  in  accordance  with

Respondents' interpretation of Schedule 11.18, under which all Fund shares of any provenance would entitle Respondents to Management Fees. The panel held, for example, that even though Stira shares would be within the scope of Schedule 11.18 according to Respondents' interpretation, Stira shares could not yield Management Fees to Respondents because "Stira Shares were not issued through DCI acting as a sub-wholesaler." (Ex. 3 at 14.)

10. The panel also emphasized that their award of Management Fees on DCI DRIP was, in their view, aligned with the Agreement's (and Schedule 11.18's) language focusing on shares issued "through Destra Capital Investments LLC acting as sub-wholesaler," on the theory that a purchaser's election to receive dividends in shares rather than cash was part of DCI's marketing of the shares. The panel found that "DCI assisted investors regarding the decision to choose DRIP shares instead of a cash dividend, and thus it can reasonably be said that the issuance of DRIP shares was through DCI acting as a sub-wholesaler." (Ex. 3 at 8.)

11. Although the panel did not discuss each claim denied, including the claim on DRIP shares issued for dividends on Provasi-sold shares (hereinafter "Provasi DRIP"), the Award made clear the Provasi DRIP claim was rejected and the Award was a full and final determination as to all claims for liability and damages (subject only to calculation of damages and attorneys' fees). The panel held "[a]ll other claims and relief sought are dismissed" (*id.* at 5), and "[a]ll claims not addressed herein are denied" (*id.* at 18.).

12. As the Third Circuit recently reaffirmed in *Verizon*, arbitrators are without power to expand an award to include a new category of relief, regardless of whether that category was discussed in the original award. In *Verizon*, the initial award granted relief to the claimant union with respect to "existing customers," without discussing new customers; the panel subsequently removed the limitation to "existing" customers, and thereby expanded the award to include new

customers, as part of a purported "clarification" of their initial award. The Third Circuit made clear that silence as to a claim did not mean the arbitrators were permitted to subsequently expand liability to include that claim, or other claims on which they had been silent. Even though the initial award had not discussed or denied relief as to "new customers," adding that additional category of relief was "precisely what the *functus officio* doctrine prohibits." 13 F.4th at 304; *see id.* at 312-13. Here, the Award did deny the relief provided in the Revised Award.

13. Despite the finality of the Award, Respondents persisted in seeking relief they had been denied, seeking "clarification, or, in the alternative, modification" of the award. Respondents ignored the panel's (i) determination not to apply Schedule 11.18 as Respondents demanded (*i.e.*, to disregard the provenance of the Fund shares), and (ii) emphasis in the Award on how DCI DRIP was (in the words of Schedule 11.18) "issued through [DCI] acting as sub-wholesaler"—which was not true of Provasi DRIP (because it is factually indisputable and logically axiomatic that DCI did not act as sub-wholesaler on shares previously sold by Provasi). Respondents nonetheless claimed that the Award failed to offer a "meaningful substantive reason why DCI-sold shares should be treated differently from Provasi-sold shares." (Claimants' Request for Clarification, or, In the Alternative, Modification of Interim Award at 3 (Oct. 28, 2021).) Disappointed in any award, Prospect chose not to relitigate or even discuss the merits, but instead respected the authority of the panel, complied with the Award, and responded that under the *functus officio* doctrine and the governing AAA rules, the panel lacked the power to modify the award post-hoc.

14. On December 15, 2021, the panel issued a "Revised Award" (Ex. 4) reversing its prior clear and unambiguous holding as to Management Fees on Provasi DRIP, accompanied by an order ("Order 22," Ex. 5) purporting to justify its reversal. In so doing, the panel applied new and different reasoning found nowhere in the Award and dramatically expanded the amount of

Prospect's liability in contravention of American Arbitration Association ("AAA") Commercial Rule 50 and the *functus officio* doctrine.

15.     The panel acknowledged that its expansion of liability was not authorized under Rule 50 (*see* Ex. 5 at 1), with Rule 50 being the only provision of the AAA Commercial Rules permitting modification of an award, which Rules the Agreement requires the panel apply.  (Ex. 1 at 38-39.)   The panel noted that Rule 50 only permits the arbitrator to "correct clerical, typographical or computational errors," and "[t]he Panel's mistake did not constitute any of these." (*Id.*)  The panel asserted that Rule 50 did not forbid the revision because, according to the panel, it "was not redetermining the merits of a claim already decided," but rather "clarifying the effect or consequence of a claim already decided."  (Ex. 5 at 1–2.)  The panel did not explain how treating the claim as not "already decided" could be reconciled with the Award's statements dismissing "[a]ll other claims and relief sought" and holding that "[a]ll claims not addressed herein are denied."  (Ex. 3 at 5, 18.)

16.     The panel noted *Verizon*'s restrictions against post-hoc revisions, but claimed that its modifications fell within one of two exceptions to *functus officio*.  First, the panel asserted that this case qualified as one in which the prior award did "not adjudicate an issue which had been submitted."  (Ex. 5 at 4.)  The panel admitted that it *did* address the contested issue, but argued that it failed to "adjudicate the issue completely."  (*Id.* (emphasis added)).  Such reasoning, if credited, would allow *any* panel to revisit *any* award, completely nullifying the *functus officio* doctrine as the exception that swallows the rule.   Moreover, this rationalization directly contradicted the Award's pronouncements that "[t]he Panel has fully considered all arguments raised" and "[t]he fact that we do not address some arguments in the ensuing discussion does not mean that such arguments were not fully considered by the Panel."  (Ex. 3 at 2.)  Second, the panel

asserted that the Award resulted in "an ambiguity . . . which the arbitrator is entitled to clarify." (Ex. 5 at 4.)  But the panel did not cite any language in the Award that was subject to multiple interpretations.  There is no ambiguity in the holding awarding relief only for "the shares for which Destra Capital Investments, LLC ('DCI') served as sub-wholesaler." (Ex. 3 at 4-5.)  Transforming that holding—*i.e.*, DCI DRIP—into an entirely different and expanded holding—*i.e.*, DCI DRIP plus Provasi DRIP—is not "a *rational* clarification of [an] ambiguity." *Verizon*, 13 F.4th at 309. Where, as here, there is no ambiguity to begin with, "the arbitrator is [impermissibly] revising the award, not clarifying it." *Id.*

17.     The panel exceeded its authority by reversing its determination with regard to Provasi DRIP.  As *Verizon* explains, "once the arbitrator decides an issue, the *functus officio* doctrine prohibits him from revising that decision without the parties' consent." 13 F.4th at 303. Rule 50 of the AAA Commercial Rules reinforces that rule and makes clear that post-award modifications are permitted only for "clerical, typographical, or computational errors," which the panel acknowledged were absent here.  The panel's attempt to justify a major substantive change in the express holding of the Award by resort to the "essence" of the Award's analysis is precisely the type of after-the-fact revision and rationalization the *functus officio* doctrine prohibits.

18.     This Court should vacate the Revised Award pursuant to 9 U.S.C. § 10 and confirm the Award pursuant to 9 U.S.C. § 9.

## PARTIES

19.     Prospect is a limited partnership whose partners are citizens of Florida.

20.     Stratera is a limited liability company whose members are citizens of Texas.

21.     Destra is a limited liability company whose members are citizens of California.

## JURISDICTION AND VENUE

22.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Prospect and Respondents are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

23.     Venue is proper in this district as the Agreement specifies and under 9 U.S.C. §§ 9 and 10(a).  (Ex. 1 (Agreement) at 40-41.)

## FACTS

**A.      Background**

24.     Prospect and Stratera launched the Fund in 2012, pursuant to an arrangement under which Prospect provided all advisory and administrative services to the Fund and a Stratera-affiliated entity, Provasi, acted as the Fund's wholesaler.  Management Fees were paid by the Fund to the LLC.  Under the LLC agreement that preceded the Agreement (the "Prior Agreement"), Prospect and Stratera were the sole members of the LLC, and split fees 50-50 based on Prospect's and Stratera's 50-50 membership units in the LLC.

25.     Provasi, as wholesaler, sold less than 10% the shares it projected selling.  Worse, in March 2018, Provasi abruptly resigned, ceasing operations and terminating nearly all its people.  With no dealer manager to raise capital, the Fund could no longer distribute any Fund shares.

26.     Stratera, Destra, and Prospect began discussions about DCI, a Destra affiliate, acting as sub-wholesaler to replace Provasi, and ultimately adopted the Agreement, effective May 11, 2018.  The Agreement adopted new compensation provisions tying Respondents' compensation to DCI's and Provasi's performance selling shares, under which Destra and Stratera would be compensated based on the number of shares issued in an Offering.

27.     Section 4.01(a)(2) of the Agreement provided that with respect to management and incentive fees the LLC received from the Fund, each of Stratera, Destra, and Prospect would

receive "the Applicable Fee Party Percentage" defined in the Agreement.  Section 10.01 provided Destra's percentage would be equal to the number of "Destra Fee Party Shares" divided by the total Fund Shares issued and outstanding.  "Destra Fee Party Shares" were defined as "37.5% multiplied by the number of Fund Shares issued and outstanding on such date that were issued in an Offering for which Destra Capital Investments LLC acts as the dealer-manager, sub-dealer-manager, subwholesaler, underwriter, or any similar role."   And "Offering" was defined in § 3.03(b)(1) as two specified public offerings:

> the Fund's initial public offering pursuant to the Registration Statement (the "Initial Registration Statement") on Form N-2 (File Nos. 333-182941 and 811-22825) and the Fund's first follow-on non-traded public offering pursuant to the Registration Statement (the "Second Registration Statement") on Form N-2 (File Nos. 333-213498 and 811-22725).

28.     In other words, Destra was entitled to a percentage of Management Fees equal to 37.5% times *only the fraction of Fund Shares issued in an Offering for which DCI acted as sub-wholesaler*, and no Management Fees for any other shares.

29.     "Stratera Fee Party Shares" and "Stratera Fee Party Percentage" distinguished between shares issued before the Agreement and those issued afterward.  Stratera received Management Fees equal to (1) 50% times the fraction of Fund shares "that were issued in the Offering prior to the date of this Agreement" divided by total Fund shares issued and outstanding and (2) for shares issued subsequent to the Agreement:  12.5% times the fraction "of Fund Shares . . . issued in an Offering from and after the date of this Agreement for which Destra Capital Investments LLC acts as the dealer-manager, sub-dealer-manager, sub-wholesaler, underwriter, or any similar role" divided by total Fund shares issued and outstanding.  (Ex. 1, § 10.01.).

30.     Shortly after adoption of the Agreement, Respondents claimed they were entitled to Management Fees for DRIP shares—which were not issued in an Offering and so not part of

"Stratera Fee Party Shares" or "Destra Fee Party Shares", and not sold by DCI.  Respondents subsequently claimed that they were also entitled to Management Fees on Fund shares issued in the Stira merger, and DRIP on those shares, even though they too were not issued in an "Offering".

## B.    The Arbitration

31.    On June 5, 2019, Stratera initiated the arbitration, captioned as *Stratera Holdings, LLC and Destra Capital Managers LLC v. Prospect Capital Management L.P.*, AAA Case No. 01-19-0001-7529.

32.    On August 31, 2020, Destra joined as a co-claimant.

33.    Respondents contended that the Agreement entitled them to 50% of all Management Fees, no matter the provenance of the applicable underlying Fund shares, even if not sold in an Offering.  They argued that the Agreement was ambiguous, in that the pay-for-performance provisions limiting their fees to shares issued in an Offering allegedly conflicted with Schedule 11.18, which they argued meant they should receive 50% of the Management Fees on *all* Fund shares, however sold or issued.  They also argued parol evidence showed the Agreement was meant to continue the Prior Agreement's 50-50 split (even though the Prior Agreement's 50-50 split was based on entirely different metric of LLC ownership, not Fund shares).  Therefore, Respondents contended, Prospect breached the Agreement by refusing them fees on DCI DRIP, Provasi DRIP, Stira shares, and Stira DRIP.  Alternatively, Respondents sought to (i) reform the Agreement based on unilateral mistake or (ii) rescind the Agreement or receive rescissory damages based on fraudulent inducement.  Prospect pointed to the Agreement's adoption of a sales driven fee structure in place of a 50-50 ownership designed to reward Respondents only for selling shares in an Offering.

**C.     The Panel Prepared to Issue a Final Award on Liability and Damages**

34.     The panel heard 13 witnesses testify over an eight-day in-person hearing from July 19, 2021 to July 28, 2021.  On July 29, the panel issued Order #21, which ordered post-hearing briefs to be submitted by September 15, 2021.  (Ex. 2).

35.     Order #21 also stated: "Proceedings with respect to attorneys' fees will be conducted after the Panel issues an Order on liability and damages, if any."  (Ex. 2, ¶ 2.)  Order #21 defined the forthcoming Award as "an Order on liability and damages."  (*Id.*)

36.     The panel officially closed the hearing September 15, 2021, when the parties' post-hearing briefs were submitted.  Rule 39(b) of the AAA Commercial Arbitration Rules, entitled "Closing of Hearing," states: "if briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs."

37.     Under Rule 45, "[t]he award shall be made promptly by the arbitrator . . . no later than 30 calendar days from the date of closing the hearing."  The only award the panel issued within 30 days of the closing of the hearing was the Award.

38.     Rule 45, like Rule 50, circumscribes and aims to eliminate the ability of any party to apply the post-trial and post-Award pressure Respondents applied here.

**D.     The Panel Issued Its Award**

39.     On October 8, 2021, the panel issued the Award, which finally and definitively resolved all parties' liability and damages claims.

40.     Respondents had sought Management Fees on the following categories of Fund shares: (1) DCI DRIP; (2) Provasi DRIP; (3) shares issued by the Fund as part of the Stira merger; and (4) Stira DRIP.  Prospect maintained none of those four categories of Fund shares were issued in an Offering; Respondents contended they were, or alternatively, that Schedule 11.18 should be

read to allocate Management Fees to Respondents based on all four categories because the provenance of the underlying Management Fee-generating Fund shares is irrelevant.

41.     The panel began its Award by emphasizing that "[t]he parties have not requested a reasoned award" (Ex. 3 at 2) and that it was resolving all claims and considering all arguments, including those it did not expressly discuss:

> "The Panel has fully considered all arguments raised.  In view of the direction in the arbitration provision of the [] Agreement concerning the nature of the award, quoted *supra*, we do not address each such argument.  The fact that we do not address some arguments in the ensuing discussion does not mean that such arguments were not fully considered by the Panel."

(Ex. 3 at 2.)

42.     The panel rejected Respondents' contention that the Agreement (or Schedule 11.18) required a 50-50 split of Management Fees on all Fund Shares.  It also rejected Respondents' fraudulent inducement claim and held that it did not need to reach unilateral mistake.  But the panel also concluded that Schedule 11.18 along with parol evidence enabled the panel to allocate DCI DRIP as part of Respondents' Management Fees consistent with the panel's findings of fact based on the complete record before the panel.

43.     The Award clearly and unequivocally drew the line at category (1) shares—DCI DRIP.  Prospect did not prevail on excluding all four Fund share categories based on "Offering," but neither did Respondents prevail on including all four Fund share categories based on Respondents' reading of Schedule 11.18.  In the section titled "Holding," the panel granted Respondents relief only as to DCI DRIP—holding that Respondents should receive fees on "DRIP shares in lieu of cash dividends that would have otherwise been due *on the shares for which Destra Capital Investments, LLC ('DCI') served as sub-wholesaler*."  (Ex. 3 at 4-5) (emphasis added).)  In the Holding section of the Award, the panel did not discuss the denied claims, including claims on Fund share categories (2) through (4), unilateral mistake, or fraudulent inducement—except to

hold that "[a]ll other claims and relief sought are dismissed." (*Id.* at 4-5.) *Verizon* prohibits the panel from redrawing (in this case, over two months later) the clear and unambiguous line it drew in the Award.

44.     As part of its reasoning for why the panel drew the line at DCI DRIP, the panel relied repeatedly on whether DCI could be said to have acted as sub-wholesaler. The Award stated in *sixteen different places* that the award of Management Fees required as an essential predicate fact that DCI "act[] as sub-wholesaler." (Ex. 3 at 4-5, 6, 8 (four times), 9 (three times), 10, 11, 13, 14 (four times).) And the panel noted that "Stira Shares were not issued through DCI acting as a sub-wholesaler" in explaining why it denied that claim. (Ex. 3 at 9, 14.) If DCI did not act as sub-wholesaler with respect to a category of Fund shares, then the Award's unambiguous holding, after "fully consider[ing] all arguments raised," was that "[a]ll [such] claims and relief sought are dismissed." (*Id.* at 2, 5.) No one disputes that DCI never acted (and could never act) as sub-wholesaler for Provasi DRIP. And there was a clear distinction between Stratera/Provasi, which provided no services for the Fund after execution of the Agreement, and Destra/DCI, which served as the Fund's distributor after execution of the Agreement.

45.     On the final page of the Award, the panel again emphasized that Respondents' other claims were denied, stating: "[a]ll claims not addressed herein are denied." (Ex. 3 at 18.)

46.     Consistent with Order #21 and Rule 39, the Award left to be resolved only clerical damages computation and attorneys' fees, stating: "The hearing was officially closed on September 15, 2021, to be reopened after this interim award is issued to address attorney's fees and an updated damages calculation." (Ex. 3 at 2.)

47.     The Award was a final award under the Federal Arbitration Act, even though the panel titled it an "Interim Award." *See Publicis Communications v. True North Communications,*

*Inc.*, 206 F.3d 725, 728–29 (7th Cir. 2000) (rejecting the position that "an arbitral ruling can be final in every respect, but unless the document bears the word 'award' it is not final and is unenforceable" and collecting cases finding "interim" awards are final awards); *Robinson v. Littlefield*, 626 Fed App'x 370, 374 (3d Cir. 2015) (holding award final as it resolved issues of liability and damages, and stated: "This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are denied.").

### E.    Respondents Complained Multiple Times About the Award

48.    Prospect was unhappy with but submitted to the Award, timely furnishing the $279,865 damages calculation for fees on Destra DRIP shares required by the award.  No one disputed Prospect's calculation.

49.    Respondents embarked on a campaign to overturn the panel's rejection of their claim for fees on Provasi DRIP shares.  From October 27 through October 31, Respondents sent a barrage of communications unauthorized under the Rules demanding the panel reverse its decision. Respondents objected to the panel's decision to limit its holding to "DRIP shares . . . on shares for which [DCI] served as subwholesaler", arguing the Award, "to be consistent with the Panel's reasoning therein and the evidence presented at the hearing, *should have defined* Stratera and Destra Fee Party Shares to include DRIP shares in lieu of cash dividends that otherwise would have been due on shares *for which either Provasi served as dealer manager or DCI served as subwholesaler*."  (Respondents' October 27 Letter at 4 (first emphasis added).)

50.    Among other communications, Respondents also filed a "request for clarification, or, in the alternative, modification of interim award."  That request doubled down on Respondents' October 27 letter to the panel, contending that the panel's failure to include Provasi DRIP was error, because "there is no basis for a distinction between DRIP shares sold by Provasi and those sold by Destra to support such an exclusion."  (Respondents' October 28 Request at 1–2.)

51.     Prospect objected that the panel lacked authority to make such a revision.   As Prospect explained, under *Verizon*, "once the arbitrator decides an issue, the *functus officio* doctrine prohibits him from revising that decision without the parties' consent." *Verizon*, 13 F.4th at 303.

52.     Rule 50 reinforces that basic principle and incorporates it into the AAA Rules, permitting post-award modifications only for "clerical, typographical, or computational errors." *See, e.g.*, *Robinson*, 626 F. App'x at 374 (after issuing an award, "[t]he arbitrator himself was not empowered to redetermine the merits of any claims or to revisit his prior conclusions [under Rule R-50]").   Indeed, in *Verizon*, the court found that a near identical rule—which permitted corrections for "clerical, typographical, technical, or computational errors" meant the *functus officio* doctrine applied.   13 F.4th at 307.   Here, the Award clearly rejected Respondents' Provasi DRIP claim.   There was no typographical or similar error, as the panel acknowledged.

**F.     The Panel Lacked Authority to Revise the Award**

53.     Nevertheless, the panel acceded to Respondents' demands for modification and, in a December 15 order,  made unauthorized, substantive modifications to the Award in violation of Rule 50 and the *functus officio* doctrine, accompanied by Order 22 attempting to justify the modifications.  (*See* Ex. 5 at 2–4.)

54.     The panel conceded—as it had to—that Rule 50 did not cover "[t]he Panel's mistake."  (Ex. 5 at 1.)   The panel acknowledged that Rule 50 permits modification only of "clerical, typographical or computational errors" and that the panel's "mistake did not constitute any of these."   But the panel nonetheless substantively altered the language of the Award in six crucial places, changing the result and the reasoning to grant Respondents relief on Provasi DRIP—and thereby expanding Prospect's liability more than twenty-fold, from under $300,000 to nearly $7 million.

55.     The panel claimed it had the power to fix its "mistake" and revise the Award because Rule 50 only prohibits an arbitrator from redetermining "the merits of any claim already decided," and the panel was merely "clarifying the effect or consequence of a claim already decided."  The panel stated that "[t]he essence of the Panel's conclusion was that fees on DRIP shares should be included in the applicable Fee Party Percentage, a conclusion that necessarily applies to DRIP shares flowing from shares issued by Provasi."  (Ex. 5 at 2.)

56.     The panel never explained "necessarily."  Nor did the Panel point to any ambiguous language about the denial of the Provasi DRIP claim, or address the Award's clear holding that besides category (1)—DCI DRIP—"[a]ll other claims and relief sought are dismissed."  The panel also did not address the Award's penultimate statement that "[a]ll claims not addressed herein are denied." (Ex. 3 at 18.)  And the panel ignored the fact that it treated as dispositive in the Award whether DCI acted as a sub-wholesaler with respect the shares at issue.  Instead, it relied solely on the previously unstated "essence of the Panel's conclusion" and newfound facts and reasoning to reverse its prior denial of Respondents' claim.

| Table I | | |
|---|---|---|
| **Holding of the Award (italics added)** | **Holding of the Revised Award (emphasis added to new language)** | **Flaws** |
| "In Schedule 11.18, one cannot calculate the Applicable Fee Party Percentages without calculating the Destra Fee Party Shares and Stratera Fee Party Shares, *both of which are based on the calculation of the Fund Shares Issued and Outstanding through DCI as a subwholesaler*." (Ex. 3 at 13, ¶ 1(a)(vi).) | "In Schedule 11.18, one cannot calculate the Applicable Fee Party Percentages without calculating the Destra Fee Party Shares and Stratera Fee Party Shares, both of which are based on the calculation of the Fund Shares Issued and Outstanding through DCI acting as a sub-wholesaler. *Per the formula contained in Schedule 11.18, DRIP shares flowing from shares issued by Provasi fall within the term "Fund Shares Issued and Outstanding* | • New factual finding improperly reopens merits. <br><br> • Factually and logically impossible.  Provasi sold shares until May 10, 2018.  DCI began selling shares May 11, 2018.  Shares sold by Provasi before Destra arrived could not have been issued through |

| Table I | | |
|---|---|---|
| Holding of the Award (italics added) | Holding of the Revised Award (emphasis added to new language) | Flaws |
| | *through DCI acting as a sub-wholesaler.'"* (Ex. 4 at 13, ¶ 1(a)(vi).) | DCI acting as sub-wholesaler. |
| "Prospect is deemed to have accepted the inclusion of DRIP shares notwithstanding the provisions in the [] Agreement that might otherwise be interpreted to exclude DRIP shares because they were not 'issued in the Offering'. For as long as DRIP shares are issued in lieu of a cash dividend to investors whose shares were *issued through DCI as a sub-wholesaler*, whether the DRIP shares are issued before or after November 2, 2019, we conclude there is no reason to exclude such DRIP shares from being included in the Applicable Fee Party Percentages. (Ex. 3 at 13-14, ¶ 1(b)(i), (ii).) | "Prospect is deemed to have accepted the inclusion of DRIP shares notwithstanding the provisions in the [] Agreement that might otherwise be interpreted to exclude DRIP shares because they were not 'issued in the Offering' *and notwithstanding language in the Third Agreement and Schedule 11.18 concerning shares issued through Destra Capital Investments LLC acting as sub-wholesaler.* For as long as DRIP shares are issued in lieu of a cash dividend to investors whose shares were issued *either through Provasi as wholesaler/dealer manager or* through DCI as a sub-wholesaler, whether the DRIP shares are issued before or after November 2, 2019, we conclude there is no reason to exclude such DRIP shares from being included in the Applicable Fee Party Percentages." (Ex. 4 at 14, ¶ 1(b)(i), (ii).) | • The reasoning in the Award changed from (i) holding "DCI acting as sub-wholesaler" an essential fact predicate to any award of damages to (ii) dismissing without justification that prior holding "notwithstanding" the Agreement and the language and reasoning of the prior holding. <br><br>• The Revised Award redraws the merits line from DCI DRIP to now include DRIP "through Provasi as wholesaler/dealer manager". This modification is plainly a redetermination of the merits. <br><br>• Provasi DRIP by its terms obviously cannot issue "through DCI acting as sub-wholesaler". |

57.     Forbidden redrawing of previously clear and unambiguous lines is precisely what the panel did in the Revised Award.  In no fewer than six different places in the Revised Award, the panel inartfully inserted Provasi DRIP into Prospect's liability, whose scope had previously and finally been determined in the Award to stop at DCI DRIP:

a. "Based on the findings of fact and conclusions of law stated below, we hold that [Prospect] has breached the Third Agreement by not calculating the fees such that the Stratera Fee Party Shares and Destra Fee Party Shares included DRIP shares in lieu of cash dividends that would have otherwise been due ***to Claimants*** on the shares for which ***either Provasi Capital Partners LP ('Provasi') served as Dealer Manager or*** Destra Capital Investments, LLC ('DCI') served as sub-wholesaler, whether such DRIP shares were issued before or after November 2, 2019." (Ex. 4 at 5 (emphasis added to newly added words in the Revised Award).)

b. "In calculating the fees in accordance with Schedule 11.18 [of the Agreement], because DRIP shares ***(whether such shares flow from shares issued by Provasi or by DCI)*** qualify as 'Fund Shares ~~issued and outstanding after May 11, 2018~~', DRIP shares ~~are considered Fund Shares Issued and Outstanding through Destra Capital Investments LLC acting as a sub-wholesaler, and thus~~ are part of the calculation of each party's Fee Party Percentage." (*Id.* at 10, ¶ 1(a)(ii) (emphasis added to newly added words in the Revised Award, and strikethrough showing the panel's radical change in reasoning from limiting damages to DCI DRIP to now inserting Provasi DRIP).)

c. "In Schedule 11.18, one cannot calculate the Applicable Fee Party Percentages without calculating the Destra Fee Party Shares and Stratera Fee Party Shares, both of which are based on the calculation of the Fund Shares Issued and Outstanding through DCI acting as a sub-wholesaler. ***Per the formula contained in Schedule 11.18, DRIP shares flowing from shares issued by Provasi fall within the term 'Fund Shares Issued and Outstanding through DCI acting as a sub-***

***wholesaler.'"***  (*Id.* at 13, ¶ 1(a)(vi) (emphasis added to newly added words in the Revised Award, not only changing the panel's reasoning 180 degrees but also being wrong, as it is impossible for Provasi-sourced DRIP shares to "fall within" DCI-sourced DRIP shares).)

d.   "Prospect is deemed to have accepted the inclusion of DRIP shares notwithstanding the provisions in the [] Agreement that might otherwise be interpreted to exclude DRIP shares because they were not 'issued in the Offering' ***and notwithstanding language in the Third Agreement and Schedule 11.18 concerning shares issued through Destra Capital Investments LLC acting as sub-wholesaler.***"  (*Id.* at 14, ¶ 1(b)(i) (emphasis added to newly added words in the Revised Award, showing the 180-degree change to the Award reasoning, from (i) holding "DCI acting as sub-wholesaler" to be the essential predicate supporting the only damages in the Award to (ii) dismissing without justification that prior holding "notwithstanding" the Agreement and the language and reasoning of the prior holding in order to pave the way to multiplying the damages payable by Prospect more than twenty-fold.)

e.   "For as long as DRIP shares are issued in lieu of a cash dividend to investors whose shares were issued ***either through Provasi as wholesaler/dealer manager or*** through DCI as a sub-wholesaler, whether the DRIP shares are issued before or after November 2, 2019, we conclude that there is no reason to exclude such DRIP shares from being included in the calculation of the Applicable Fee Party Percentages."  (*Id.* at 14, ¶ 1(b)(ii) (emphasis added to newly added words in the Revised Award).)

f.   "Unlike the DRIP shares, the Stira Shares were not issued through ***Provasi as wholesaler/dealer manager or*** DCI acting as a sub-wholesaler." (*Id.* at 15, ¶ 1(c) (emphasis added to newly added words in the Revised Award).)

If, as the panel contended in Order #22, the "essence" of the Award already required the inclusion of Provasi DRIP, the panel would not have needed to rewrite the above six critical sentences supporting its reasoning, and Respondents would not have so demanded.

58.   The panel's reversal violates Rule 50 and the *functus officio* doctrine.  *See Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 992 (3d Cir. 1997) (purpose of *functus officio* is "to prevent arbitrators from engaging in practices that might encourage them to change their reasoning about a decision, to redirect a distribution of an award, or to change a party's expectations about its rights and liabilities contained in an award").  The panel contended that it did not run afoul of Rule 50's prohibition on "redetermin[ing] the merits of any claim already decided," because it was merely "clarifying" what it had already decided (Ex. 5 at 1), but this contention was wrong in multiple ways.

59.   First, the structure of Rule 50 establishes that correcting any errors other than "clerical, typographical or computational errors"—and the panel stated it was correcting what it described as an "error," *see id.*—amounts to impermissible redetermination of the merits.  There is no intermediate category of error-correction under Rule 50 that is more than "clerical, typographical or computational errors" but less than an impermissible redetermination.

60.   Second, the panel acknowledged the Award included only fees on DCI DRIP and had not "includ[ed] in the Interim Award fees on DRIP shares flowing from shares issued by Provasi." *Id.*  And the Award expressly stated that "[a]ll other claims and relief sought are

dismissed."   If nonetheless awarding the previously "dismissed" category of fees does not "redetermine" what was already decided, "redetermine" has a new meaning.

61.     Third, the law denies the panel power to "clarify" except to remove ambiguities. As *Verizon* emphasizes, "[u]nflagging deference to arbitrators' 'clarifications' would effectively give them the power to revisit the merits of prior decisions, thus completely eliminating the *functus officio* doctrine."   13 F.4th at 309.   Here, there was no ambiguity—the Award's holding clearly dismissed Respondents' claim for relief on Provasi DRIP and limited Respondents' damages to Management Fees on "DRIP shares [issued] in lieu of cash dividends that would have otherwise been due on the shares for which Destra Capital Investments, LLC ('DCI') served as sub-wholesaler, whether such DRIP shares were issued before or after November 2, 2019."   The failure to discuss claims denied including Provasi DRIP did not create an ambiguity that permitted adding that or any other category to the Award, just as the failure to discuss new customers in *Verizon* did not permit revision of the award to include new customers as a category of liability.   13 F.4th at 304.   *See generally Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 389 F. Supp. 3d 687, 701-02 (N.D. Cal. 2019) ("There was no ambiguity to clarify. . . .   Here, too, the arbitrator went beyond clarifying a specific ambiguity in redetermining an issue that had already been decided.")

62.     Despite the mandates of the Agreement, the AAA Rules, and controlling precedent applying *functus officio*, the Panel violated all binding authorities in the Revised Award.   *Verizon*, 13 F.4th at 309 (holding that proponent of clarification must demonstrate that there actually is an ambiguity requiring clarification, and "a *rational* clarification of the ambiguity; otherwise, the arbitrator is revising the award, not clarifying it").

63.     Prospect is submitting herewith an Opening Brief in Support of this Petition and Motion.

## COUNT ONE
### (Confirmation of the Award under 9 U.S.C. § 9)

64.     Prospect incorporates by reference the allegations and arguments in the foregoing paragraphs and in the Opening Brief in Support of this Petition and Motion.

65.     The Award is a final binding adjudication of all liability and damages issues in the arbitration except for ministerial calculation.

66.     The modifications in the Revised Award are invalid and void.

67.     Accordingly, the Award should be confirmed under 9 U.S.C. § 9.

## COUNT TWO
### (Vacatur of Revised Award under 9 U.S.C. § 10)

68.     Prospect incorporates by reference the allegations and arguments in the foregoing paragraphs and in the Opening Brief in Support of this Petition and Motion.

69.     Pursuant to 9 U.S.C. § 12, Prospect has brought this motion within three months after the Revised Award was issued.

70.     In revising the Award, the Panel exceeded its authority under § 11.15 of the Agreement, which requires the application of the Rules, by (i) purporting to correct an error that admittedly was not "clerical, typographical, or computational" and (ii) redetermining the merits of an already decided claim.

71.     The Panel's revisions substantively and substantially modified the Award with respect to claims already decided, multiplying Prospect's liability and damages.

72.     The Panel exceeded its powers under Rule 50 of the AAA Rules and the *functus officio* doctrine.

73.     Accordingly, the Revised Award should be vacated under 9 U.S.C. § 10(a)(4).

## COUNT THREE
### (Vacatur of Revised Award as Manifest Disregard of the Law)

74.     Prospect incorporates by reference the allegations and arguments in the foregoing paragraphs and in the Opening Brief in Support of this Petition and Motion.

75.     Pursuant to 9 U.S.C. § 12, Prospect has brought this motion within three months after the Revised Award was issued.

76.     In revising the Award, the Panel manifestly disregarded § 11.15 of the Agreement, which requires the application of the AAA Rules, by (i) purporting to correct an error that admittedly was not clerical, typographical, or computational and (ii) redetermining the merits of an already decided claim.

77.     The Panel knew that Rule 50 was controlling, yet deliberately chose to ignore it. *Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 77 (1st Cir. 2008) ("If the arbitrator ignores the plainly stated procedural rules incorporated in the agreement to arbitrate while arriving at the arbitral award, that award is subject to a manifest disregard of the law challenge.").

78.     The Panel manifestly disregarded *Verizon* and the *functus officio* doctrine.

79.     Accordingly, the Revised Award should be vacated.

**WHEREFORE**, Prospect respectfully requests this Court:

A.     Confirm the Award.

B.     Vacate the Revised Award.

C.     Award Prospect further relief as this Court deems just and proper.

Of Counsel:

Meir Feder
Michael Rossman
Jack Millman
Jones Day
250 Vesey Street
New York, New York 10281
(212) 326-7870
mfeder@jonesday.com
emrossman@jonesday.com
jmillman@jonesday.com


Jonathan J. Li
Adam M. Burton
Prospect Administration LLC
10 East 40th Street
New York, New York 10016
(646) 845-6060
jli@prospectstreet.com
aburton@prospectcap.com

Dated: February 15, 2022

/s/ Raymond J. DiCamillo
Raymond J. DiCamillo (#3188)
Katharine L. Mowery (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
mowery@rlf.com


*Attorneys for Prospect Capital Management L.P.*